## MARTIN M. FULKERSON v. STATE.

No. A—3182. Opinion Filed Jan. 31, 1920.

(189 Pac. 1092.)

1. **INDICTMENT AND INFORMATION—Requisites—Statutory Language.** Words used in a statute to define a public offense need not be strictly pursued in the indictment or information, but other words conveying the same meaning may be used.

2. **EMBEZZLEMENT—Information—Sufficiency—Duplicity.** For reasons holding the information in this case not duplicitous, and sufficient to charge the crime of embezzlement, as defined by section 7437, Revised Laws 1910, see body of opinion.

3. **EMBEZZLEMENT—Proof of Exact Amount as Alleged.** Under an indictment for embezzlement the state is not required to prove the embezzlement of the exact amount as alleged in the indictment or information.

4. **EMBEZZLEMENT—Embezzlement by School District Treasurer—Variance.** Where the defendant, as treasurer of a school district, is charged with the embezzlement of a certain sum of money belonging to the said district, and the proof adduced upon the trial shows that the defendant received as treasurer of said school district, a certain warrant issued to said school district by the county treasurer and deposited the same to his personal credit in a bank and afterwards checked against said fund for his personal use, **held,** there is no fatal variance between the

allegations of the information and ·the proof. For discussion of the reasons for so holding, see body of opinion.

5. STATUTES—Effective Date of Embezzlement Statute. Section 7437, Revised Laws 1910, became effective on the 16th day of May, 1913.

6. EVIDENCE—Hearsay Evidence. It is not error to excluae proffered evidence where the same is clearly hearsay as to the witnesses by which the alleged facts are attempted to be proven.

7. EMBEZZLEMENT—Evidence—Offer of Restitution—Purpose. A proffer of evidence that the defendant was anxious and willing to restore the funds alleged to have been embezzled was properly excluded. Such evidence would not constitute a defense to the charge, nor be proper to be considered in mitigation of the punishment; but restoration of the funds, or tendered restoration thereof, or of any part thereof, before the commencement of the prosecution, is proper to be considered in mitigation of the punishment.

8. APPEAL AND ERROR—Harmless Error—Instructions. Where the trial court instructs the jury along certain lines requested by counsel for the defendant, although not in the identical language requested, and it is contended on appeal that certain language used in the instruction given amounts to a comment upon the weight of the evidence, and an examination of the record discloses that the language complained of is almost identical with the language used by defendant's counsel in the requested instruction, the alleged error complained of 'cannot be considered reversible.

9. SAME—Rulings on Evidence. Before this court can reverse a conviction upon the ground that the trial court erred in the admission or rejection of evidence or in its instructions to the jury, we must first find from an inspection of the entire record that appellant was injured thereby, and to determine this issue the court must consider the question of whether appellant is guilty or innocent of the offense charged.

10. SAME—Instructions—Em̄ ezzlement. For reasons holding that the trial court's instructions in not limiting the jury to one particular act of embezzlement as a basis for conviction was not reversible error in this case, see body of opinion.

*Appeal from District Court, Woods County;*
*W. C. Crow, Judge.*

Martin M. Fulkerson was convicted of embezzlement, and he appeals. Affirmed.

*Wm. M. Bickel, H. A. Noah,* and *J. W. Barry,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. The defendant, Martin M. Fulkerson, who was treasurer of the board of education of the city of Alva, Okla., was convicted of the crime of embezzling the funds of said school district, and sentenced to serve a term of seven years' imprisonment in the state penitentiary and to pay a fine of $5,531.42.

The prosecution is based on section 7437, Revised Laws 1910, which provides:

"If any county treasurer, or other officer or person charged with the collection, receipt, safe-keeping, transfer or disbursement of the public money, or any part thereof, belonging to the state or to any county, precinct, district, city, town or school district of the state, shall convert to his own use or to the use of any other person, body corporate or other association, in any way whatever, any of such public money, or any other funds, property, bonds, securities, assets or effects of any kind received, controlled or held by such officer or person by virtue of such office or public trust for safe-keeping, transfer or disbursement, or in any other way or manner, or for any other purpose; or shall use the same by way of investment in any kind of security, stocks, loan property, land or merchandise, or in any other manner or form whatever; or shall loan the same, with or without interest, to any person, firm or corporation, except when authorized by law; or if any person shall advise, aid, or in any manner knowingly partici-

pate in such act, such county treasurer, or other officer or person shall be deemed guilty of an embezzlement of so much of said money or other property, as aforesaid, as shall be converted, used, invested, loaned or paid out as aforesaid; and upon conviction thereof, such county treasurer or other officer or person shall be sentenced to imprisonment in the penitentiary at hard labor for a term of not less than three years nor more than twenty-one years, and also to pay a fine equal to double the amount in money or other property so embezzled as aforesaid; which fine shall operate as a judgment lien at law on all the estate of the party so convicted and sentenced, and shall be enforced by execution or other process for the use of the person whose money or other funds or property as aforesaid shall have been so embezzled; and in all such cases such fines, so operating as judgment, shall be released or entered as satisfied only by the person in interest, as aforesaid."

The information, omitting the caption, is in form as follows:

"In the name and by the authority of the state of Oklahoma, comes now Sandor J. Vigg, who is the duly qualified and acting county attorney in and for the county of Woods, state of Oklahoma, and upon his official oath gives the above-entitled court to know and be informed that Martin M. Fulkerson, the above-named defendant and M. M. Fulkerson are now, and have been at all the times mentioned in this information, one and the same identical person; that the city of Alva is now, and has been at all the times mentioned in this information, a duly and legally incorporated city of the first class and municipal corporation, organized and existing in the state of Oklahoma and under and by virtue of the laws of the state of Oklahoma and the laws of the former territory of Oklahoma; that the said city of Alva, together with such other outlying and adjoining territory as has from time to time been legally attached thereto for school purposes, does now, and did at all the times mentioned in this information, constitute and compose a

separate school district known and designated as school district 1, of the county of Woods, state of Oklahoma, and the same is now, and has been at all the times mentioned in this information, under the control, supervision, and management of the board of education of the city of Alva, of the state of Oklahoma; that the public schools of the said city of Alva, composed, constituted, organized, and numbered as aforesaid, are now, and have been at all times mentioned in this information, a body corporate organized and existing in and under and by virtue of the laws of the state of Oklahoma and the former territory of Oklahoma, possessing the usual powers of a corporation for public purposes by the name and style of the board of education of the city of Alva, of the state of Oklahoma; that the said board of education of the city of Alva, of the state of Oklahoma, is now, and has been at all the times mentioned in this information, a body corporate for public and school purposes, organized and existing under and by virtue of the laws of the state of Oklahoma and of the former territory of Oklahoma; that at all times from about the 28th day of April, A. D. 1908, to about the 28th day of August, A. D. 1913, continuously, Martin M. Fulkerson, the above-named defendant, was the duly elected, qualified, and acting treasurer of the city school board of the said city of Alva, and of the said school district 1, of the county of Woods, state of Oklahoma, and of the said board of education of the city of Alva, of the state of Oklahoma, the same being now, and having been at all the times mentioned in this information, one and the same identical body corporate and public corporation for school and other public purposes, organized and existing under and by virtue of the laws of the state of Oklahoma and of the former territory of Oklahoma; that heretofore and on or about the 9th day of August, A. D. 1913, at and within the said county of Woods, state of Oklahoma, the said Martin M. Fulkerson, then and there being, was then and there an officer, to-wit, the duly elected, qualified, and acting treasurer of the said city school board of the city of Alva, and of the said school district 1, of the

county of Woods, state of Oklahoma, and of the said board of education of the city of Alva, of the state of Oklahoma, the same being then and there a body corporate and public corporation for school and other public purposes, organized and existing under and by virtue of the laws of the said state and territory aforesaid, and as such treasurer and officer of the said body corporate and public corporation as aforesaid the said Martin M. Fulkerson was then and there, and at all times mentioned in this information, charged and intrusted with the collection, receipt, safekeeping, transfer, and disbursement of the sum of money hereinafter mentioned and of the public money and other funds, property, bonds, securities, assets, and effects of, for and on behalf of the said body corporate and public corporation aforesaid, all of which said sum of money hereinafter mentioned and other funds, assets, and property, a better description of which is to your informant unknown, then and there belonged to and were then and there the personal property of the said city school board of the said city of Alva, and of the said school district 1, of the county of Woods, state of Oklahoma, and of the said board of education of the city of Alva, of the state of Oklahoma, as such; that on or about the said 9th day of August, A. D. 1913, at and within the said county of Woods, state of Oklahoma, the said Martin M. Fulkerson, as such officer and treasurer aforesaid, so acting, charged, and intrusted as aforesaid, was then and there intrusted and charged with, and did then an there receive, have, and hold in his possession and under his control by virtue of his said office and public trust as such officer and treasurer of the said city school board of the said city of Alva, and of the said school district 1, of the county of Woods, state of Oklahoma, and of the said board of education of the city of Alva, of the state of Oklahoma, and for the public purposes aforesaid, that certain sum of money hereinafter mentioned and certain public moneys and other funds, bonds, property, securities, assets, and effects by him received and collected, as such treasurer and officer of the said body corporate and public

corporation aforesaid, from the various sources of revenue and taxation provided by law and from the county treasurer in and for the said county of Woods, state of Oklahoma, and by him, the said Martin M. Fulkerson, as such officer and treasurer, received, controlled, and held for the said city school board of the said city of Alva, and for the said school district 1, of the county of Woods, state of Oklahoma, and for the said board of education of the city of Alva, of the state of Oklahoma, in large sums, but the exact amount of the said public moneys, funds, property, securities, assets, and effects so received, had, held, and controlled by the said Martin M. Fulkerson, as such officer and treasurer afore-, said, being to your informant unknown; that on or about the said 9th day of August, A. D. 1913, at and within the said county of Woods, state of Oklahoma, the said Martin M. Fulkerson, then and there being, and while so acting in said office as treasurer for the said city school board of the said city of Alva, and for the said school district 1, of the county of Woods, state of Oklahoma, and for the said board of education of the city of Alva, of the state of Oklahoma, as aforesaid, and so charged and intrusted with the control, disbursement, receipt, safe-keeping, and transfer of the said sum of public money hereinafter mentioned and of the funds, moneys, property, securities, assets, and effects afore‧ said, and being then and there in possession of the same by virtue of his office and public trust as treasurer of the said city school board of the said city of Alva, and as treasurer of the said school district 1, of the county of Woods, state of Oklahoma, and as treasurer of the said board of education of the city of Alva, of the state of Oklahoma, did then and there unlawfully, willfully, wrongfully, designedly, fraudulently, stealthily and corruptly, feloniously, and without authority of law, and not in the due and lawful execution of his said trust as such officer and treasurer aforesaid, take, steal, carry away and embezzle, convert and appropriate to his own use and benefit, and to a use and purpose not in the due and lawful execution of his said trust as such officer and treasurer aforesaid, and to the use of other persons, bodies corporate, and associations to your informant un-

known, but other than those entitled thereto, a part of said public moneys and other funds, property, bonds, securities, assets and effects, the money and property of the said body corporate and public corporation aforesaid, received, controlled, and held by and intrusted and charged to him, the said Martin M. Fulkerson, as such officer and treasurer and by virtue of his said office and public trust as aforesaid, to-wit, the sum of $2,765.70, in good and lawful money of the United States of America, and to the amount and of the value of $2,765.70, the said sum of money being then and there the money and property of the said body corporate and public corporation as aforesaid, of the public moneys and other funds, property, bonds, securities, assets, and effects, collected, received, had, held, and controlled by him, the said Martin M. Fulkerson, by virtue of his said office and public trust as such officer and treasurer of the said city school board of the said city of Alva, and of the said school district 1, of the county of Woods, state of Oklahoma, and of the said board of education of the city of Alva, of the state of Oklahoma, a more particular description of the said money and property is to your informant unknown, with the willful, unlawful, fraudulent, and felonious intent of him, the said Martin M. Fulkerson, to then and there permanently deprive the said city school board of the said city of Alva, and the said school district 1, of the county of Woods, state of Oklahoma, and the said board of education of the city of Alva, of the state of Oklahoma, of its said sum of money and property in the amount and of the value of $2,765.70, as aforesaid, and to convert the said sum of money and property to his own use and benefit and to a use and purpose not in the due and lawful execution of his said trust as such officer and treasurer aforesaid, and to the use of other persons, bodies corporate, and associations to your informant unknown, but other than those entitled thereto, not in the due and lawful execution of his said trust as such officer and treasurer aforesaid, contrary to the form and in violation of the statute in such case made and provided, and against the peace and dignity of the state of Oklahoma."

The defendant interposed a demurrer to the foregoing information, which is in form as follows:

"Comes now the defendant herein and demurs to the information filed herein for the reason:

"First. That it does not substantially conform to the requirements of the chapter of Criminal Procedure of the statutes of Oklahoma.

"Second. That more than one offense is charged in the information.

"Third. That the facts stated do not constitute a public offense.

"Fourth. That the information contains matter which, if true, constitutes a legal bar to the prosecution."

The trial court overruled said demurrer, to which action the defendant at the time excepted, and as one of the grounds of error relied upon for reversal the action of the trial court in overruling said demurrer is urged. It is contended here that said information is duplicitous, in that it charges the crime of embezzlement both under section 7437, *supra,* and also under section 2671, Revised Laws 1910, which is as follows:

"If any person, being an officer, director, trustee, clerk, servant or agent of any association, society or corporation, public or private, fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement."

It is further urged that the information is duplicitous because it charges in one count two separate and distinct crimes, embezzlement and larceny.

The court is of the opinion that neither of these contentions is meritorious. It is evident from a reading of the foregoing information that the pleader intended to charge the crime of embezzlement, as defined by section 7437. The fact that the pleader used the words, "and not in the due and lawful execution of his trust as such officer," which language is contained in section 2671, neither added to nor took away from the other allegations contained in said information, which follow the language of the crime as defined in section 7437. It is apparent that, if the school district treasurer committed any of the acts of conversion defined to be criminal in section 7437, his action in so doing was "not in the due and lawful execution of his trust as such officer," and the use of such language in the information, where the pleader has followed substantially the language of the statute defining the offense, as contained in section 7437, could not be held to be misleading to the defendant. The statutes of this state prescribe the duties of a school district treasurer with reference to the disbursement of the funds of the school district coming into his hands, and an allegation in the information that such officer converted said funds to his own use, or to the use of any other person not authorized to receive them, is equivalent to an allegation that the same were appropriated to some use and purpose not in the due and lawful execution of his trust.

The rule is well established that the pleader is not confined to the exact language of a statute in pleading a statu-

tory offense, but may use other words conveying the same meaning. Section 5745, Revised Laws 1910, provides:

"Words used in a statute to define a public offense need not be strictly pursued in the indictment or information, but other words conveying the same meaning may be used."

See, also, *Bowes v. State,* 8 Okla. Cr. 277, 127 Pac. 883; *Reed v. State,* 1 Okla. Cr. 481, 98 Pac. 583, 129 Am. St. Rep. 861.

The contention that the information is duplicitous, in that it charges both embezzlement and larceny, is also without merit. The information employs language often used in charging the crime of larceny, but the information nowhere charges all the essentials necessary to constitute the crime of larceny. The allegations of the information in this case clearly show that the possession of the property which the defendant is alleged to have taken or embezzled was lawful; the information alleging that he was "the duly elected, qualified, and acting treasurer of the school district, and as such officer he received and had in his possession and under his control by virtue of such office, public moneys and other funds, bonds, property, securities, assets, and effects by him received and collected as such treasurer from the various sources of revenue and taxation provided by law and from the county treasurer in and for the said county of Woods, state of Oklahoma, and by him, the said Martin M. Fulkerson, as such officer and treasurer, received, controlled, and held for the said city school board of the said city of Alva." The law imposed upon him as such officer the duty of receiving and collecting and disbursing such public funds in the manner alleged in the information; the allegations, therefore, show that his possession was lawful

in the first instance. The subsequent allegations that he thereafter "took, stole, and carried away" such moneys did not have the effect of stating a larceny charge. For cases in point see *State v. Adams,* 108 Mo. 208, 18 S. W. 1000; *State v. Lanier,* 89 N. C. 517; *State v. Harris,* 106 N. C. 682, 11 S. E. 377; *State v. Fain,* 106 N. C. 760, 11 S. E. 593.

An indictment charging the offense of embezzlement in the identical language with that contained in the information above set out was urged to be duplicitous in the case of *Middleton v. State,* 16 Okla. Cr. 320, 183 Pac. 626, based upon section 7437, *supra.* In the *Middleton Case,* this court held adversely to such contention, the particular paragraph of the syllabus in that opinion touching this matter being as follows:

"The count of the indictment upon which the defendant was tried held to charge but one offense, and to sufficiently inform the defendant of the particular offense he was called upon to answer."

The conclusion is reached, therefore, that the trial court did not err in overruling the demurrer to the aforesaid information.

It is also contended that the trial court erred in overruling the demurrer to the evidence of the state, and in refusing to advise the jury to return a verdict of not guilty.

The specific ground upon which this contention is based is stated as follows:

"That the information charged that on or about the 9th day of August, 1913, the defendant embezzled the sum of $2,765.70, and the evidence discloses that the county attorney had full knowledge and information of all the facts relative to the transaction relied upon, to wit, the alleged

offense of the embezzlement of $588.86, and that the sum
was alleged in the manner it was for the purpose of mis-
leading the defendant, and the information was therefore
uncertain and not direct."

It is urged in support of this assignment that because
the county attorney knew of the specific item of $588.86,
which it is contended was relied upon for a conviction, the
allegation in the information of a different amount of
money was purposely done to mislead the defendant, and
thus it brings the assignment within the purview of those
cases where the indictment alleges "a more particular and
definite description of a certain particular thing is to the
grand jurors unknown"; when in such instances it is shown
that the grand jurors did know, or should have known, the
matter alleged to be unknown to them, it results in a fatal
variance.

We are of the opinion that the rule contended for is not
applicable to the proof in this case, and that it was not a
fatal variance for the prosecuting attorney to allege an em-
bezzlement in one sum where the proof showed distinct
conversions of different sums of money by a public officer,
although an election of a particular act or item of embez-
zlement of a sum different from that alleged in the informa-
tion was relied upon for a conviction.

The rule applicable is as follows:

"Under an indictment for embezzlement, it is suffi-
cient for the state to prove embezzlement of any part of the
amount alleged." *Walker v. State,* 117 Ala. 42, 23 South.
149; *Weimer v. People,* 186 Ill. 503, 58 N. E. 378; *Bolen v.
State,* 51 Neb. 581, 71 N. W. 444; *Goodwyn v. State* (Tex.
Cr. App.) 64 S. W. 251; *State v. Lewis,* 31 Wash. 75, 71 Pac.
778; *Secor v. State,* 118 Wis. 621, 95 N. W. 942.

It is also contended in this connection that there was a fatal variance between the issues formed and the proof adduced, for the reason that the information charges the embezzlement of $2,765.70, in good and lawful money of the United States of America, while the proof, if it shows the embezzlement of anything, is that of an order or warrant drawn by the county clerk against the county treasurer in favor of the school district of which the defendant was treasurer.

It is sufficient to state in this connection that the record does not support the contention that counsel make.

The defendant was acting in the dual capacity of cashier of the Alva Security Bank of Alva, Okla., and at the same time treasurer of the board of education of the city of Alva, commonly called school district No. 1, of Woods county, Okla. The record discloses that on the 3d day of May, 1913, the county clerk issued an order upon the treasurer of Woods county, Okla., in favor of the said school district, in the sum of $588.86. This order was turned over to the defendant. On the 16th day of May, 1913, the defendant, as cashier of the aforesaid bank, deposited the said order in said bank to his personal credit, but he exercised no act of converting this fund to his own use, or to the use of any other person, until he checked against it on the 17th day of May, 1913. His act of checking against the credit in the bank for an unlawful purpose amounted to a segregation of that much of the money of the school district which had come into his hands, and was a conversion of the same. Until he had so acted there was no apparent intent upon his part to convert the same to his own use. In legal effect, therefore, the conversion was of money of

the school district, within the meaning of the statute, and not of any other species of property.

The rule is stated in 9 Ruling Case Law, p. 1297, as follows:

"Nor is there a variance between an allegation of embezzlement of public moneys of a county and proof that the defendant, without obtaining possession of the actual money, drew checks against the account to which the moneys were deposited, which were duly presented and paid. The reasons advanced for this holding are (1) that when a check is drawn there is a segregation of money from the general funds of the bank, and for a space of time, however short, the money of the depositor is being dealt with, and (2) that the word 'money' in embezzlement statutes relating to public funds is used in a generic and not in a specific sense, that is, that it includes all actual moneys, credits, and funds of every kind belonging to the public."

In the case of *Territory v. Hale,* 13 N. M. 181, 81 Pac 583, 13 Ann. Cas. 551, it is said:

"It is next urged that there is variance between the allegation and proof fatal to the conviction, in that the embezzlement was not of money, but of a credit in a bank where the funds of the county were deposited. It appears from the proofs that the collector and treasurer of Mora county deposited the public funds of the county in the First National Bank of Las Vegas, in San Miguel county. The collector and treasurer authorized and directed the bank in writing to pay all checks signed in a designated way by defendant out of an account which he kept in the bank as collector and treasurer. The deposit was not special, but general, and like that of any ordinary depositor in a bank. Defendant drew a large number of checks on the bank against this account and sent them through the mails or delivered them to various persons who presented the same and received payment thereon. Defendant never had pos-

session of any actual money, but accomplished the embezzlement, if at all, in the above manner. Does this amount to embezzlement of money?

"In the first place, it is clear that when the money of Mora county. was placed on general deposit with the bank the same became, for some purposes at least, the money of the bank, and the relation of debtor and creditor between bank and depositor arose. *Bank of the Republic v. Millard,* 10 Wall. [190] 155, 19 U. S. (L. Ed.) 899. But when a check is drawn there is a segregation of that much money from the general funds of the bank, which becomes the property of the depositor. This may be placed to the credit of the payee of the check, or it may be handed him in money, or otherwise disposed of as the parties may elect. But for a space of time, however short, the money of the depositor is being dealt with. And so it has been held under statutes against embezzlement of money that such embezzlement is accomplished by the drawing of a check upon a bank where such money is deposited. *State v. Krug,* 12 Wash. 288, 41 Pac. 126; *Bartley v. State,* 53 Neb. 310, 73.N. W. 744; *Bork v. People,* 16 Hun (N. Y.) 476; *People v. McKinney,* 10 Mich. 54. *Contra, Carr v. State,* 104 Ala. 43, 16 South. 155.

"Another view has been advanced for the same holding, to the effect that the word 'money' in embezzlement statutes relating to public funds is used in a generic and not a specific sense, that is to say, that it includes all actual moneys, all credits, and funds of every kind belonging to the public. We can see no impropriety in such view. The result must be salutary, and can in no way impair the rights of defendants. The holding in this case that the facts support a conviction of embezzlement of money may well rest upon either view above suggested."

In view of the fact that the charge here is the embezzlement of public funds, great latitude must be permitted in the description of the money or funds alleged to be embezzled, because the people exercise no close supervision

over the acts of a public official and cannot, like private individuals, direct the custody of its funds at any particular moment, as was said by the Supreme Court of Kansas, in *State v. Smith,* 13 Kan. 274. Further in said opinion it is said:

"The proper authorities may require when to account, may examine the funds in his possession, but in the next hour all these funds may be changed, long before the act of embezzlement is done or the intent is formed. To suppose that the Legislature, when they added the large class of public officers to those who might be amenable to the law for the offense of embezzlement, intended to require proof of the identity of the money embezzled, or a description of it, or from whom it was received, is to infer that they intended to enact a law the enforcement of which would be impossible."

We reach the conclusion, therefore, that the evidence in this case sufficiently supports the allegation that the embezzlement was of good and lawful money of the United States, the property of the school district, and that there was no fatal variance between the allegation to that effect contained in the information and the proof adduced upon the trial.

It is also contended that "the transaction alleged to be criminal occurred at a time when the same, if committed, did not constitute a crime."

This contention is based on the proposition that the state elected to stand and rely for a conviction on a particular act of embezzlement, which it is contended was committed, if at all, on the 16th day of May, 1913, by the defendant exchanging a warrant or order for the payment of money to the school district for credit in the Alva Secur-

ity Bank; the particular contention of counsel being that, if there was an embezzlement committed, it was committed on the 16th of May, 1913, by the defendant embezzling a warrant of the school district by reducing it to the form of credit in the bank to himself.

This prosecution is based upon section 7437, Revised Laws 1910, which became effective with the adoption of said laws, and according to the proclamation of the secretary of state, in consonance with section 2, c 75, Session Laws 1913, "from and after the 16th day of May, 1913," and the contention of counsel for the defendant is that said statute did not take effect until after midnight of the 16th of May, 1913, and the only evidence supporting a conviction showed that the funds were converted, if at all, on the 16th of May, 1913, as heretofore stated, and therefore the prosecution must fail.

One phase of this contention has been covered in what we have heretofore said concerning the variance between the allegations of the information and the proof adduced upon the trial; the conclusion being reached that there was no act of embezzlement proved, that is, no evidence showing a criminal intent to convert the moneys of the school district to defendant's own use was submitted to the jury for a convicition for any act committed prior to the 17th day of May, 1913.

Another view, however, presents itself, which renders the contention of counsel for defendant doubly untenable, and that is that the word "money" employed in the statute, being used in its generic sense, includes all classes of funds of the school district which were received and collected by the defendant as its treasurer. If, therefore, there was

no variance between an allegation that the defendant embezzled money and proof that he converted a warrant of the district to his own use, which counsel for the defendant, for the purpose of this argument, admit the evidence supports to have occurred on the 16th of May, 1913, then if said statute was effective on the 16th day of May, 1913, the contention of defendant is groundless for this further reason.

Section 2 of chapter 75, Session Laws 1913, provides:

"Section 3 of chapter 39, Session Laws of Oklahoma, Session 1910-1911, being House Bill No. 562 of said session is hereby amended to read as follows: 'Sec. 3. This act shall take effect and be in force from and after the sixth day after the receipt of the secretary of one thousand copies of the Revised Laws of the State of Oklahoma, by this act adopted, and the issuance of a proclamation by the secretary announcing the receipt of said Revised Laws by him; provided, that the secretary of state shall immediately upon receipt of not less than one thousand copies of said Revised Laws of the State of Oklahoma, issue a proclamation announcing the receipt thereof, and cause the same to be immediately published in some newspaper of general circulation, published at Oklahoma City, which proclamation shall state specifically the date on which this act shall take effect.' "

This was the particular statute adopting the Code known as the Revised Laws 1910, including section 7437, *supra*.

In pursuance of said section, the secretary of state issued his proclamation, which is as follows:

"A Proclamation.

"State of Oklahoma                    Department of State.

"Benjamin F. Harrison, Secretary of State.

"Whereas, the Fourth Legislature of the state of Oklahoma passed House Bill No. 345, which was approved by the Governor, March 22, 1913, section 2 of which is as follows: 'This act shall take effect and be in force from and after the sixth day after the receipt by the secretary of one thousand copies of the Revised Laws of the State of Oklahoma, which this act adopted, and the issuance of a proclamation by the secretary acknowledging the receipt of said Revised Laws by him; provided, that the secretary of state shall immediately upon receipt of not less than one thousand copies of said Revised Laws of the State of Oklahoma issue a proclamation acknowledging the receipt thereof, and cause the same to be immediately published in some newspaper of general circulation published at Oklahoma City, which proclamation shall state specifically the date on which this act shall take effect.'

"And whereas, one thousand copies of the said Revised Laws of the State of Oklahoma have been received on this date:

"Now, therefore, I, Benjamin F. Harrison, secretary of state of the state of Oklahoma by virtue of the said act, do hereby proclaim that the said Revised Laws of Oklahoma 1910, otherwise known as the Harris-Day Code, shall be in force and effect from and after Friday, May 16, A. D. 1913.

"In testimony whereof, I hereto subscribe my name and affix the great seal of the state of Oklahoma, at Oklahoma City, this 10th day of May, A. D. 1913.

"BENJAMIN F. HARRISON,
"[Seal.]                        *Secretary of State.*"

The question arises, therefore, as to the meaning of the words "from and after," as used in said statute and the subsequent proclamation of the secretary of state declaring the same to be effective. It will be noticed in the statute that the secretary of state is required to "state

specifically the date on which this act shall take effect"
(referring to the Revised Laws of Oklahoma 1910). The
only date mentioned in the secretary's proclamation is the
16th day of May, 1913. True, the words "from and after"
are used, but such words do not have any certain meaning
so that they can be accepted as a guide under all circum-
stances. There are numerous cases to the effect that
"from and after" a specified date (designating the date a
statute is to take effect), means that it takes effect on the
day named. *Whittaker v. Mutual Life Insurance Co. of
New York,* 133 Mo. App. 664, 114 S. W. 53. In *Leaven-
worth Coal Co. v. Barber,* 47 Kan. 29, 27 Pac. 114, it is held:

"Where a statute provides that it shall take effect
'from and after its publication,' in computing the time
when it takes effect the day of its publication is to be in-
cluded."

In order that no uncertainty might arise as to the par-
ticular day on which the Revised Laws should take effect,
the Legislature provided that the secretary of state should
issue a proclamation announcing the receipt by him of not
less than 1,000 copies of said laws, and should issue a proc-
lamation immediately stating specifically the date on
which said Code should take effect. The only date men-
tioned in the secretary of state's proclamation is the "16th
day of May, 1913." The intent, therefore, clearly appears
from the context of the statute and proclamation that said
laws should be effective on the 16th day of May, 1913.

This view is supported by several decisions of the
Supreme Court of this state, wherein it is said that said
laws took effect on the 16th day of May, 1913. *In re Ap-
plication of State to Issue Funding Bonds,* 40 Okla. 54, 136
Pac. 1104, Ann. Cas. 1916E, 399; *Malloy v. Johnson et al.,*

40 Okla. 454, 139 Pac. 310; *In re Huddleston,* 75 Okla. 48, 181 Pac. 711. Also of this court in *Penn v. State,* 13 Okla. Cr. 367, 164 Pac. 992, L. R. A. 1917E, 668.

To hold that the Revised Laws took effect on any date subsequent to the 16th day of May would permit the secretary of state, by the use of the words "from and after the 16th day of May, 1913," in his proclamation, to do the very thing that the Legislature by the adopting act intended clearly to prevent, to wit, confusion as to the particular day upon which the Revised Laws should take effect.

While the cases cited above do not specifically hold in the syllabi thereof that said Code took effect on the 16th day of May, each of said cases contains a statement in the body of the opinion that said Code took effect on that day. These cases, therefore, are at least persuasive, if not binding, as to the construction that should be placed upon this statute.

It is also contended that the trial court erred in refusing to permit the defendant to introduce proffered evidence to the effect that all the items and amounts claimed to have been embezzled had been kept by the defendant and were in a safety deposit vault at Kansas City, and were there held in trust for the school district at the time of the trial, and that defendant was, and had been, ready, anxious, and willing to pay the same over and settle with the school district as soon as they could determine the amount due and owing to the district.

The only witnesses offered in behalf of the defendant were David L. Frazier and C. A. Giblet, both members of the school district board and residents of Alva, Okla., and neither of them connected with any banking institution or other concerns possessing safety deposit vaults in Kansas

City. The record plainly shows that whatever information they may have had concerning any such deposit of funds in a safety vault in Kansas City by the defendant was by way of a self-serving declaration to that effect by the defendant. This proffer of evidence amounted to indirect effort on the part of the defendant to get before the jury the fact that he claimed to these witnesses to still have the amount of money of the school district in his possession, or at least where he could obtain the same.

The defendant did not take the witness stand in his own behalf, and the record further discloses that his successor as treasurer of the school district demanded of him that he pay over all the moneys and return the records and other property of the school district in his, defendant's, possession at the time he was suspended from office. This the defendant failed and refused to do, and no restoration of the funds or other property of the school district was made by the defendant even up to the time of the trial.

The alleged proffer of evidence as to the deposit of funds in a safety vault in Kansas City was properly excluded, if for no other reason, on the ground that it was in the nature of hearsay evidence as to the two witnesses by which it was offered to be proved.

The alleged proffer of evidence that the defendant was anxious and willing to restore the funds was properly excluded because the same, if true, would not constitute a defense to the charge of embezzlement, nor be proper to be considered in mitigation of the punishment.

Section 2680, Revised Laws 1910, provides:

"Whenever it is made to appear that prior to any information laid before a magistrate charging the commis-

sion of embezzlement, the person accused voluntarily and actually restored or tendered restoration of the property alleged to have been embezzled, or any part thereof, such is not a ground of defense to the indictment, but it authorizes the court to mitigate punishment in its discretion."

It is apparent, therefore, that if the actual restoration or tendered restoration of property alleged to have been embezzled constitutes no ground of defense, *a fortiori* the fact that the defendant was anxious and willing to do these things would be no ground of defense. But restoration or tendered restoration may be considered in mitigation of the punishment, but the evidence must show either a restoration or a tendered restoration before the commencement of the prosecution, not merely anxiety or willingness on the part of the defendant to do these things.

A certain instruction of the court is contended to be erroneous and prejudicial as invading the province of the jury in determining what the evidence shows. Said instruction was objected and excepted to in the court below upon the sole ground that it did not correctly state the law of the case.

In this court it is urged, however, that the instruction is upon the weight of the evidence. The instruction was an instruction upon the purpose for which the jury might consider the evidence of other alleged acts of embezzlement occurring during the tenure of office of the defendant as treasurer of the school district. The particular language complained of is as follows:

"You are further instructed that, although the state has been permitted to offer evidence tending to show that the defendant may have committed other acts of embezzlement during his tenure of office as treasurer prior to May 16, 1913. * * *"

The argument is advanced that because the court used the words "other acts of embezzlement" the inference arose that the defendant had and did commit the act of embezzlement for which he was charged.

We find in the record that the defendant requested the court to give an instruction upon this particular subject, in part as follows:

"You are instructed that the state has been permitted to offer evidence tending to show that defendant may have committed other and various acts of embezzlement during his entire period of office as treasurer of school district No. 1."

It is apparent, therefore, that the trial court merely copied in the instruction given almost the identical language employed by counsel in requesting a similar instruction along the same line. If there was any error committed in giving the instruction complained of, which we do not hold, it was evidently done at the request of counsel for the defendant, and this court will not consider as reversible error anything done in the trial court which was requested or invited by the action of defendant's counsel.

Further, it is contended that the trial court erred in giving certain instructions which permitted the jury to find the defendant guilty of an act of embezzlement other than that upon which the state elected for a conviction, and in refusing at the request of the defendant to give an instruction which limited the jury's consideration to the particular act of embezzlement for which an election was had.

This court has held in cases of conviction for statutory rape, the sale of intoxicating liquors, and the like, that

where evidence is introduced of other acts of sexual intercourse between the prosecutrix and the defendant, or of other sales of intoxicating liquors by the defendant to the prosecuting witness, for the various purposes, for which such acts may be shown in evidence, then it is the duty of the trial court, upon motion of the defendant, when the state rests its case, to require the state to elect upon which one of the several acts it intends to rely for a conviction, and the refusal of the trial court to require the state to elect, under such circumstances, is reversible error.

In this case, no such request was made at the conclusion of the state's evidence. But it may be contended that in this case no such request was necessary, because the state had already made an election for an offense proven to have been committed, if at all, either on the 16th or 17th of May, 1913.

The purpose of causing the state to elect upon the particular act is to require the state to prosecute for but one offense; and it is apparent, therefore, that an election should be required prior to the time that the defendant is called upon to offer proof in defense of the charge. In this case, the only request made to the trial court by the defendant after the state had offered its evidence came at the conclusion of the defendant's evidence also, and was in the form of a requested instruction. At this stage of the trial all the evidence was before the court, and it was apparent to the trial court that the defendant had offered no evidence whatever in defense of any alleged act of embezzlement to which the state had directed proof. The error, if any, therefore, was occasioned by the court's refusing to give the requested instruction, which occurred at the conclusion of all the evidence.

Section 6005, Revised Laws 1910, only permits this court to reverse a judgment of conviction on the ground of misdirection of the jury when it is apparent from an examination of the entire record that the trial has resulted in a miscarriage of justice, or that the defendant has been deprived of some constitutional or statutory right to his prejudice. In *Fowler v. State,* 8 Okla. Cr. 130, 126 Pac. 831, it is held:

"Before this court can reverse a conviction upon the ground that the trial court erred in the admission or rejection of evidence, or in its instructions to the jury, we must further find from an inspection of the entire record that appellant was injured thereby; and to determine this issue the court must consider the question as to whether appellant is guilty or innocent of the offense charged."

Numerous other cases might be cited to the same effect, but the policy of this court not to reverse a judgment of conviction for errors of this kind where the defendant has clearly been proven guilty is so universally well known that the citation of further authority or making of further comment is unnecessary.

It may be added that there are numerous and well-considered authorities to the effect that, in the trial of cases for the crime of embezzlement by public officers, the various acts of embezzlement, if more than one act be proven, are often treated as a series or general scheme to embezzle the public funds, culminating in the embezzlement of so much of the money or funds for which the officer is unable to account at the end of his term or at the time he vacates office. The reason for such rule is based upon public necessity, in that history has proven that the offense of embezzlement by public officers most always is consti-

17-4

tuted of a series of petty and continuous peculations, man-ifestly difficult, if not impossible, of proof separately. So that in cases of this class a different rule as to election of offenses is established than in cases of statutory rape, the sale of intoxicating liquors, and the like, and this court could with propriety hold, following numerous authorities to that effect, that it was not error to refuse to compel an election between particular acts by the state in this case. At least the defendant would have no just room to complain of such a decision, for the reason that, all the acts having been submitted, jeopardy attaches to all of them, and the effect of the court's action was to make but one offense out of the several transactions. The offense, being the outgrowth of a general scheme, was continuous in its nature, forming an embezzlement of that amount of money which the public officer during his term, and within the period of the statute of limitations, had, pursuant to such general scheme, finally converted to his own use or to some other use and purpose in violation of the statute. But it is not necessary to rest our conclusion solely on that theory.

In the case of *Sterling v. State,* 90 Miss. 255, 43 South. 952, 13 Ann. Cas. 776, the Supreme Court of Mississippi, after holding in a case of embezzlement that the trial court committed no error in refusing to compel the district attorney to elect as to which of the single acts of embezzlement charged he would rely upon for a conviction, in the body of the opinion said:

"It is not contended by learned counsel that it was incompetent to prove as many of these different acts of embezzlement as the state could; but the insistence is upon the point we are now considering, the refusal of the court

to compel the district attorney to elect as to which single one of all these different acts of embezzlement he would proceed upon, and is simply this: That, the evidence being all in, it was then the duty of the court to limit the state to the selection of one single act, and stand or fall as the proof might warrant on that act. We do not think this is the correct view of this statute. It seems to us competent for the court, since the charge is embezzlement, and since all these alternatives are merely different forms and phases of one substantive crime of embezzlement, not only to introduce all of them in evidence which it could, but use any or all of them in substantiating the substantive charge of having embezzled a balance of account of $72,000. If, however, we should be mistaken in this view, it is undoubtedly true that, standing at the close of a completed record, as we do, and looking back on a finished trial, it is perfectly manifest that, if any error was committed in the procedure in this respect, it was not reversible error, since the evidence overwhelmingly shows the appellant guilty of every single act of embezzlement shown in the testimony."

We heartily approve of what is said by the Supreme Court of Mississippi in the closing sentence of the excerpt above quoted. It clearly and distinctly states in a nutshell the policy controlling the decisions of this court established by the Legislature in the enactment of the provisions of section 6005, Revised Laws 1910.

We have before us here the appeal by a defendant who made no substantial defense to the merits of the prosecution in the lower court. The evidence on the part of the state not only proved him to be guilty of the particular act cf embezzlement on May 16th or 17th, 1913, for which he claims it was error for the trial court not to limit the jury's consideration, but it also proves him to be guilty of every other separate act of embezzlement for which the jury

might have found him guilty under the court's instructions. During his entire incumbency in the office of treasurer of the board of education of the city of Alva, he succeeded, according to the proof in this case, in converting to his use or to some other unlawful purpose the aggregate sum of exceeding $20,000, committed by a series of peculations beginning shortly after he took office and extending nearly to the time of his suspension in August, 1913. He proved untrue to the confidence and trust imposed in him by his fellow citizens. He offered no defense, and apparently has none, to any of the particular acts or to all of them.

It would be an imposition upon the taxpaying people of Woods county and the city of Alva to reverse this case for any of the reasons urged by counsel representing defendant, and in addition it would be a plain violation of the sworn duty of this court to uphold the laws of this state by giving effect to the plain provisions of section 6005, *supra*.

The judgment of the trial court is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.