LEE FOWLER v. STATE.

No. A-1101.   Opinion Filed September 30, 1912.

(126 Pac. 831.)

1.   **TRIAL—Instructions—Exceptions.**  (a) Our statutes require that the instructions in a case must be settled before they are read to the jury.  This means that counsel must have an opportunity to offer suggestions to the trial court with reference to the instructions given, and reserve exceptions to any instructions which they deem to be injurious to the rights of their client.

   (b)  Where the trial court refused to submit the instructions in a case to the attorneys for their inspection before the instructions are read to the jury, a defendant will be entitled to such objections and exceptions as he might have had if the instructions had been previously submitted to his counsel.

2.   **HOMICIDE—Instructions—Self-Defense.**  When a defendant is unlawfully attacked at a place where he has a right to be, it is improper to instruct the jury that he cannot plead self-defense unless the jury find that he could not have averted the danger by retreating.

3.   **SAME—Evidence—Res Gestae—Credibility of Witness—Character.**  (a) The character of the place where a homicide is committed is a part of the res gestae of the offense, and may be proven upon the trial.

   (b)  On cross-examination for the purpose of affecting his credibility, the occupation, manner of living, and companions of a witness may be inquired into.

   (c)  The fact that a witness is a professional bootlegger, or has been convicted of bootlegging, may be proven for the purpose of impeaching his testimony.

4.   **APPEAL—Harmless Error.**  Before this court can reverse a conviction upon the ground that the trial court erred in the admission or rejection of evidence, or in its instructions to the jury, we must further find, from an inspection of the entire record, that appellant was injured thereby; and to determine this issue the court must consider the question as to whether the appellant is guilty or innocent of the offense charged.

5.   **HOMICIDE—Appeal—Harmless Error.**  For a statement under which admitted error of the trial court in the instructions to the jury is not ground for reversal, see opinion.

   (Syllabus by the Court.)

*Appeal from District Court, Jefferson County;*
*Roy Hoffman, Assigned Judge.*

Lee Fowler was convicted of manslaughter in the first degree, and appeals. Affirmed.

Appellant was tried in the district court of Jefferson county, charged with the offense of murder. He was convicted by the jury of manslaughter in the first degree, and sentenced by the court to imprisonment in the penitentiary for the period of 25 years.

The following is a condensed statement of the material parts of the testimony introduced in this case:

Dr. L. P. Sutherland testified: That he was a physician and resided in the town of Waurika. That he was summoned to attend the deceased shortly after he received the fatal wound. That upon examining the body of deceased he found that a bullet had entered to the left of the spinal column and gone out about three or four inches beneath the fifth and sixth rib and passed through and came out immediately over the sixth rib. This wound was fatal. Deceased was wounded about 4 o'clock at night, and died at 8 o'clock the next morning. That he was present when the clothes of deceased were taken off of him. That there was nothing about his person, except a few dollars in silver in his pants pocket, two $5 bills, and his watch and some tobacco and a little memorandum book, and that no weapon was found on deceased, except a pocketknife.

Joe Weyman testified for the state: That he resides in and was night watchman of the town of Waurika. That he heard the shots of the difficulty in which the deceased was killed. That he entered the joint kept by appellant about two minutes afterwards. That he saw the deceased there. He was just crouched down against the building. He was neither lying down nor standing. That with the assistance of others he carried the deceased back into the building and straightened him out. Deceased did not speak. When witness entered the room, appellant said, "I am the man that done the shooting," and said, "Here is my gun." Appellant said he shot one shot to bluff deceased and the next one to hit him. Appellant was trying to take a drink of liquor. He had a bottle in one hand and a glass in the other. Appellant was very nervous, and could not pour the liquor with-

out spilling it, and finally set the glass down and took the bottle in both hands. This happened in Jefferson county, state of Oklahoma. Appellant was very much excited and very nervous when witness entered the room.

Dr. Cantrell testified: That he was a physician and resided in Waurika. That shortly after the shooting he was called to the place of business of appellant and found the deceased there wounded. Dr. Sutherland was there. Deceased was shot in the back. That the ball came out about two inches below the right nipple. Deceased died from the effects of this wound the next morning. That a pocketknife and some money was taken from the clothes of deceased after he was shot.

J. O. Barnhill testified for the state: That witness heard the shooting which resulted in the death of deceased. It was between 3 and 4 o'clock at night. Witness then went to the place of business of appellant. Witness heard appellant say, "I have killed him." Appellant says, "By God, he is dying, and all I regret is that I shot him in the back." Appellant also said, "I ought to be hung," and said he would not have done it for a thousand dollars. Witness saw a knife taken from the pockets of deceased after he was removed to the hospital. The state then rested its case.

Miss Pearl Atwood testified for appellant: That she was a nurse at the Stevens Sanatarium at Waurika at the time of this homicide; was there when deceased was brought in wounded. That witness examined the clothing of deceased and found some money and a pocketknife. That the money and pocketknife were all in the same pocket. The knife was open when found in the pocket of deceased.

Joe Weyman was recalled by the appellant, and testified that he did not hear appellant say that the only thing he regretted was that he shot the deceased in the back, and that he ought to be hung.

Lee Fowler, the appellant, testified in his own behalf: That he lived in the town of Waurika, and was running a joint there at the time deceased was killed. That he had met the deceased two or three times before the killing. That on the night of the

homicide deceased and appellant were engaged in a game of cards. They began to play about 11 o'clock, and continued to play until about 3:30. That they started playing pitch for $1 a game, and when they quit playing they were playing for $5 a game. That on several occasions during the game a squabble came up between them. Witness then testified as follows:

"A. We was playing—every once in a while he would raise a squabble over the game, or something like that, and along about 3:30, something like that, between 3 and 4 o'clock, we had played a game for $5. I won the game and left up my $5 on the table, and finally he claimed the $5 bill himself, and I pitched the cards across the table, and I told him it was getting late; I would quit. And he said all the time I was the fairest man he ever played with. And he said, 'I will play you for all the money you have got in front of you.' I told him 'All right,' I would play him. I wanted to quit anyway. Q. Well, did you play him? A. No, sir; we didn't. Q. What was the reason you didn't play him? A. Why, I put up my money. I believe I had $22.50. I had a $10 bill and a $5 bill and $7.50 in silver—I had $7, I believe it was, and two quarters that we had used during the game for set-back when we first commenced playing—and he stacked his silver up on top of my money, and then backed out and would not play, and taken $2.50 of my money. Q. What was said then when he took the $2.50 of your money? A. I told him he had gotten my money, and I didn't want to take it away from him. Q. What did he say? A. 'I will die before I will give it up.' Q. What did you do, if anything? A. He raised up just about the time he put this money in his pocket, or after he went to his pocket with this money, and said, 'I will kill the damn son of a bitch or have it.' The Court: I didn't hear it. A. He says, 'I will kill the damn son of a bitch or have the money,' and raised up and started to his pocket. Q. Which pocket? A. To his right-hand pocket. Q. What did you do then? A. Why, I raised up and drawed my gun just as quick as I could and shot. Q. How many times did you shoot? A. I shot twice, I believe. Q. Do you know which shot hit him? A. I would judge the first one did. Q. How came you to shoot the second shot? A. It was accidentally shot. Q. You may state whether or not you was excited at the time? A. Yes, sir; I was excited. Q. At the time you fired the shot, you can state to the jury whether or not you believed your life in danger? A. I thought he meant to kill me at the time."

Several witnesses testified that they knew the appellant, and that his general reputation as a peaceable, law-abiding man was good. The state, in rebuttal, proved by two witnesses that they heard Miss Atwood state that when she took the knife from the pocket of deceased it was closed, but that she had a habit of opening a knife as soon as it came into her hands, and that she had opened this knife as soon as she took it out of the pocket of deceased.

*Bridges & Vertrees,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, P. J. (after stating the facts as above). First. But two questions are presented in the brief of counsel for appellant. The first is that the trial court erred in refusing to allow appellant to examine the instructions given, before they were read to the jury, in order that they might have an opportunity to present objections and save exceptions to the instructions read. The recitals contained in the record sustain this contention of counsel for appellant. There was error in this action of the court. Our statutes require that the instructions must be settled before they are read to the jury. This means that counsel should have an opportunity to offer suggestions to the trial court with reference to the instructions given, and make objections to any instruction which they may deem to be injurious to the rights of their client. Where the court refuses to comply with this provision of the law, a defendant is entitled to such objections and exceptions as he might have had, provided the instructions had been submitted to his counsel for inspection before they were read to the jury. For a full discussion of this question, see *Thompson v. State,* 6 Okla. Cr. 50, 117 Pac. 216.

Second. Among other things, on the subject of self-defense the court instructed the jury as follows:

"There must have been no other reasonable mode of escape or of avoiding the combat with safety. As a matter of law, no one has a right to kill another, even in self-defense, unless such killing is apparently necessary for such defense. Before a per-

son can justify taking the life of a human being on the ground of self-defense, he must, when attacked, employ all reasonable means within his power, consistent with his safety, to avoid the danger and avert the necessity of the killing; and if you find he could have, by retreating, averted the danger and avoided the necessity of the killing, it was his duty to do so."

To this instruction counsel for appellant vigorously object, and, as they requested an opportunity to inspect the instructions before they were given to the jury, we must treat this instruction as though expressly excepted to. Under this instruction, it would be necessary for the jury to find as an affirmative fact that the defendant had used all reasonable means, consistent with his safety, to avoid the danger and avert the necessity of the killing; and that he could not, by retreating, have averted such danger and avoided the necessity of the killing. This practically placed the burden upon the appellant of proving his innocence. This form of instruction has been repeatedly condemned by this court. See *Price v. Territory,* 1 Okla. Cr. 508, 99 Pac. 157; *Floyd v. State,* 5 Okla. Cr. 65, 113 Pac. 212. Under the old common law, no man could defend himself until he had retreated, and until his back was to the wall; but this is not the law in free America. Here the wall is to every man's back. It is the wall of his rights; and when he is at a place where he has a right to be, and he is unlawfully assailed, he may stand and defend himself; and cases sometimes arise in which he has the right, when unlawfully assailed, to advance and defend himself until he finds himself out of danger.

Third. On cross-examination, appellant testified that the place where the homicide occurred was a booze joint, and that he was engaged in the sale of intoxicating liquors. This evidence was material and competent, because the character of a place where a homicide is committed is a part of the *res gestae* of the offense; and it has always been held that the occupation, manner of living, and companions of a witness may be inquired into, on cross-examination, for the purpose of affecting his credibility. See *Slater v. United States,* 1 Okla. Cr. 275, 98 Pac. 110; *Musgraves v. State,* 3 Okla. Cr. 421, 106 Pac. 544. The fact that a witness is a bootlegger may be proven for the purpose of

impeaching his reputation for truthfulness, and is as effective for this purpose as his general reputation would be. *Hendrix v. State,* 4 Okla. Cr. 611, 113 Pac. 244; *Crawford v. Ferguson,* 5 Okla. Cr. 377, 115 Pac. 278.

Fourth. In their brief counsel for appellant do not claim that their client is innocent; neither do they attempt to show how he was injured by the errors complained of. They not only studiously avoid the discussion of those questions, but they say:

"As we have learned, and partly through the opinions of this court, it is no concern to the appellate tribunal whether the defendant is guilty or innocent."

We are at an utter loss to understand how counsel can make this statement, because it is directly the reverse of the law of Oklahoma. This question came before this court first in the case of *George v. United States,* 1 Okla. Cr. 319, 97 Pac. 1052, 100 Pac. 46. This court there said:

"When a defendant is clearly guilty, this court will not reverse a conviction upon a technicality or exception which does not affect the substantial rights of the defendant. This is the settled policy of this court."

In fact, we could not hold otherwise without committing willful, wicked, and deliberate perjury. Our statutes expressly state that on appeal this court must give judgment without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties. This is one of the laws which we have sworn to enforce; and the lawyers of Oklahoma must distinctly understand that we are going to follow this statute explicitly, both in its letter and in its spirit. This statute meets with our entire approval. This we announced in the case of *Byers v. Territory,* 1 Okla. Cr. 702, 100 Pac. 261, 103 Pac. 532. We there said:

"If, upon appeal, the only question to be decided was as to whether or not any error had been committed upon the trial of the case in the court below, without reference to the question of the guilt of the defendant, then the trial judge would be the real defendant, and would be upon trial on the appeal, and the guilt of the defendant would become immaterial. Certainly no sane and impartial man should contend for a doctrine which would be so subversive of justice, and which would result in such

ruinous consequences to the enforcement of criminal law. It would make our courts a mockery, a snare, and a delusion. Justice demands that in the administration of law its processes should never be allowed to become a game of skill between contending counsel. There has been entirely too much of this in the past. It has resulted in the miscarriage of justice in many cases, and has bred a spirit of disgust for law and contempt for courts in the public mind. Reduced to its last analysis, the doctrine contended for by counsel, if recognized, would require this court to hold that, where evidence is admitted during a trial, and upon appeal it is held that such evidence was improperly admitted, a reversal of the conviction must follow, regardless of the character of the evidence in the record, upon the ground that, the prosecution having offered this evidence as a part of its case, it is estopped from denying its injurious effect. It appears to us that this application of the doctrine of estoppel to the state, in the enforcement of its criminal laws, on account of the ignorance or mistaken judgment of one of its servants, is technically run mad and gone to seed. We decline to be bound by or to follow a line of authorities so repugnant to reason, so demoralizing to respect for law, and so destructive to justice. The habit of reversing cases upon technicalities is a very convenient one for appellate courts; for by so doing they can escape much hard labor and avoid all responsibility for their decisions, for a violation of some technical rule can be found in almost every closely contested case. We believe that appellate courts should faithfully and fearlessly do their duty, and decide every question presented with reference to the substantial merits of the case in which it arises. In this way only can justice be administered."

Counsel will look in vain for any support, in the decisions of this court, of the position they have taken in their brief.

Fifth. It is conceded that the trial court erred in refusing to submit the instructions to counsel for appellant for inspection, in order that they might have an opportunity to reserve any exceptions which they might desire to save, and to request any special instruction in addition thereto, before the instructions given were read to the jury. It is also conceded that the trial court erred in imposing an illegal burden upon the law of self-defense in its instructions to the jury. But it does not necessarily follow that this conviction must be reversed, because we cannot lawfully reverse a conviction, unless we have reason to

believe, from an inspection of the entire record, that the appellant has been deprived of some substantial right thereby, to his injury, in the trial of the case. Upon a consideration of the entire record, we are of the opinion that, while the trial court erred as to the law, the jury were clearly right in the conclusion at which they arrived; and that if any mistake was made it was in convicting the appellant of manslaughter in the first degree, when they should have convicted him of murder. Appellant was engaged in a business which placed him in open defiance of the laws of the state. This does not prove or tend to prove that he is guilty of murder; but it is utterly inconsistent with the good character which he attempted to establish as to his being a quiet, law-abiding, and peaceable citizen, and his occupation, under the repeated decisions of this court, clearly impeached and destroyed his credibility as a witness. The testimony of the state was that deceased was shot in the back, and within two minutes after the fatal shot was fired, when the first witness entered the place of business of appellant, appellant announced that he had done the killing, and stated that he fired the first shot to bluff the deceased and the last to hit him; and that appellant did not then attempt to excuse or justify what he had done, or state any cause for the shooting, but was found with a whisky bottle in one hand and a glass in the other, and was so nervous and excited or intoxicated that he could not pour the liquor in the glass without taking the bottle in both hands. To other persons who came in some time afterwards, appellant said: "I have killed him. By God, he is dying, and all I regret is I shot him in the back. I ought to be hung." It seems that when appellant realized what he had done, from his own low standard of morals, he believed he ought to be hung, and in this opinion we concur, and we are surprised that the jury did not reach the same conclusion. Appellant and deceased had been gambling together nearly all night, and, considering the place and the condition of appellant when the witnesses came in, they had been drinking whisky. A dispute doubtless arose with reference to the stakes of the game, and to enforce his claims appellant appealed to his six-shooter, and when deceased attempted to leave

he was shot in the back. This was a case of murder, and instead of appealing and complaining appellant should be extremely grateful to the jury for having found him guilty of manslaughter only.

While there is error in the record, yet we find that appellant suffered no injury thereby. The judgment of the lower court is therefore affirmed.

ARMSTRONG and DOYLE, JJ., concur.