## A. F. HOLMES v. STATE.

No. A-3481—Opinion Filed Feb. 22, 1921.

(195 Pac. 508.)

(Syllabus)

1. **INTOXICATING LIQUORS — Evidence—Sufficiency.** Evidence examined, and held sufficient to support a conviction for unlawfully conveying intoxicating liquor.

2. **WITNESSES—Cross-Examination.** For reasons holding ruling of trial court correct on objections to questions asked of a witness on cross-examination, see body of opinion.

3. **TRIAL—Instructions Covered by General Charge.** Where the law contained in a requested instruction is in substance covered in the general charge, it is not error to refuse to give the instruction in the form requested.

4. **APPEAL AND ERROR—Harmless Error—Instructions.** Under section 6005, Rev. Laws 1910, this court is not authorized nor permitted to reverse a judgment of conviction based upon overwhelming evidence of guilt merely because of a misdirection of the jury, when it is evident that no miscarriage of justice resulted, and defendant was not deprived of some constitutional or statutory right.

*Appeal from County Court, Greer County;*

*J. L. Carpenter, Judge.*

A. F. Holmes and another were convicted of the offense of unlawfully conveying intoxicating liquor, and they appeal. Affirmed.

*W. C. Stevens* and *E. L. Richardson,* for plaintiffs in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. Plaintiffs in error, hereinafter designated defendants, were convicted in the county court of Greer county of the offense of unlawfully conveying in-

toxicating liquor, and sentenced to pay a fine of $500 and to serve a term of six months each in the county jail. From the judgment rendered against them, they have appealed to this court.

The prosecution is based on section 3605, Revised Laws 1910, making it an offense "to ship or in any way convey such liquor [intoxicating liquor] from one place within this state to another place therein except the conveyance of a lawful purchase as herein authorized."

The information charged defendants with having conveyed 81 gallons of whisky "from the line of Harmon county, Okla., and Greer county, Okla., on the Ozark Trail west of Reed, Okla., to a place on said Ozark Trail about three miles west and north of Mangum, Okla., near the farm and home of W. B. Henry."

The undisputed evidence is to the effect that these defendants, traveling in a Paige automobile, which was loaded with 81 gallons of whisky, were traced from a place in the state of Texas about 18 miles southwest of Hollis, Okla., along the Ozark Trail to the point last described in the information on said Ozark Trail in Greer county, Okla., and near the farm and home of W. B. Henry where they were apprehended at about 2:30 o'clock in the morning and arrested by the sheriff and other officers of said Greer county. Neither defendant took the witness stand in his own behalf.

The assignments of error (1) that the court erred in refusing to direct a verdict of not guilty; (2) that the verdict is contrary to the law and the evidence; (3) that the judgment upon the verdict is contrary to the law and the evidence, are grouped together, and under these as-

signments it is contended that, although the information charged an intrastate conveyance of intoxicating liquor, the evidence conclusively shows that it was an interstate conveyance, the liquors having been purchased at a place in Texas where it was lawful to buy and sell whisky at that time.

The only evidence bearing on the question of whether or not this was an interstate conveyance of liquor lawfully purchased in the state of Texas is contained in the following excerpts from the record:

"Q. Now, Mr. Counts, you testified as to what they told you, are you positive Mr. Harris said he got the whisky at Dalhart? A. Yes, sir; Mr. Henry asked them, I think he asked Mr. Holmes first, and then he asked Mr. Harris, and both said they got it at Dalhart.

"Q. Mr. Harris did not say he got the whisky himself, did he? A. He did not say; said they got it at Dalhart.

"Q. Did he say it came from Dalhart? A. No, sir; he said they got it there. * * *

"A. Yes, they stopped; they could not get across, and when they stopped I got on one side of the car and Mr. Counts got on the other side, and he told them to consider themselves under arrest.

"Q. What was the first thing said by you officers or the men, and what all was said? A. Mr. Counts said; 'Consider yourselves under arrest,' and we told them to hold up their hands. Mr. Holmes was trying to stop the car or doing something to the brakes, and then they put their hands up and got out, and one of them said, 'You have got us.'

"Q. Do you know which one of them said, 'You have got us?' A. I am not positive; I think it was Mr. Holmes.

"Q. What else was said and done? A. Mr. Henry came up, it was kind of cool, and he had gone to the house to get his coat, and he came up and asked them where they were from. They said they were from Dalhart, and were going to Lawton.

"Q. Which one of them was it said they come from Dalhart? A. Both of them. * * *

"Q. What did they say as to where they came from? A. I asked them, and they said Dalhart. I asked them where they were going, and they said Lawton.

"Q. Which one said that? A. They both said it; said they were taking the whisky to Lawton."

All the evidence, therefore, as to this being a lawful purchase of whisky is contained in the statements of these defendants at the time they were apprehended and arrested. They each said they got the whisky at Dalhart. There is no evidence to show from whom they got or purchased the whisky, whether or not it was a lawful sale made by a person authorized to sell whisky, nor is there a syllable of evidence in the record to the effect that these defendants had purchased and were conveying this liquor from the state of Texas to the state of Oklahoma for their own personal use. That said whisky was a lawful purchase, intended for personal use, is a matter of defense, and there must be evidence in the record sufficient to create a reasonable doubt of guilt before the evidence would be insufficient to sustain the conviction. *Rupard v. State,* 7 Okla. Cr. 201, 122 Pac. 1108; *Schave v. State,* 4 Okla. Cr. 285, 111 Pac. 962; *Tolliver v. State,* 13 Okla. Cr. 52, 163 Pac. 130. There is no competent evidence that the liquor here conveyed was a lawful purchase; and, in the absence of any proof to the contrary, the amount of liquor possessed was sufficient

to raise a prima facie presumption of fact that the liquor was intended to be used for an unlawful purpose. Section 6, chapter 26, Session Laws 1913. The foregoing assignments of error are wholly without merit. There is absolutely no competent legal evidence in the record to support the contentions urged under these assignments, even admitting the legal proposition urged to be sound, which we do not hold.

It is also contended that the trial court erred in refusing to admit and in ruling out competent and legal evidence offered by defendants on cross-examination, to which defendants duly excepted. The record in support of this assignment of error is as follows:

"Q. Do you know whether he ever handled any whisky—do you know his general reputation; it was generally good, wasn't it?

"By the Court: Mr. Smith, that question should be answered as to yes or no. A. Yes, sir.

"Q. He was a law-abiding citizen, wasn't he? Mr. Mills: Objected to as incompetent, irrelevant, and immaterial, and not the proper method. (Which objections are by the court sustained.)

"Q. Mr. Harris lived in Childress county after you knew him? A. Yes. sir."

In support of this assignment of error, counsel have the following to say:

"It does seem that this man who was in a county on trial for his liberty where he was unknown should have been allowed to prove that he was a law-abiding citizen."

No authority is cited in support of the assertion

made. The objection was properly sustained: (1) The question was not in proper form; (2) no showing is made as to what the answer of the witness would have been had he been permitted to answer; (3) the witness had previously without objection answered that the general reputation of defendant Harris was good; (4) it was discretionary with the trial court to exclude such evidence on cross-examination of a state's witness as not proper cross-examination.

It is also contended that the trial court erred in refusing to give defendant Frank Harris's special requested instruction No. 1, which is as follows:

"You are instructed that if you find from the evidence in this case that the car and whisky belonged to the defendant Holmes, and you further find from the evidence that the defendant Harris had no part in the conveyance of the liquor, but was a mere passenger on the car, or if you have a reasonable doubt as to this fact, then it would be your duty to find the defendant Harris not guilty."

The foregoing instruction was refused for the reason that the same was covered in the general charge. An examination of instructions Nos. 3 and 4 of the general charge discloses that the law contained in the foregoing requested instruction, was, in substance, covered therein. In view of the evidence in this case, however, it would not have been error for the court to have failed to instruct on this question. There is no competent and legal evidence in the record to sustain the giving of the requested instruction.

It is also contended that the court erred in giving certain paragraphs of the general charge to the jury.

The court has read the instructions, and, when considered as a whole, they fairly and fully cover the law of the case.

This is a case in which the evidence of guilt is conclusive, and in which no meritorious or substantial defense is made to the prosecution. Under section 6005, Revised Laws 1910, this court is, not authorized nor permitted to reverse judgments of conviction based upon overwhelming evidence of guilt merely because of misdirection of the jury, when it is evident that no miscarriage of justice occurred, and the defendant was not deprived of some constitutional or statutory right.

Judgment affirmed.

DOYLE, P. J., and BESSEY, J., concur.