### WILL BAKER v. STATE.

No. A-3716. Opinion Filed Aug. 19, 1922.
Rehearing Denied Dec. 2, 1922.
(210 Pac. 292.)

(Syllabus.)

1. **Homicide—Self-Defense—Proper Instruction on Viewing Circumstances from Defendant's Viewpoint.** For instruction considered a fair exposition of the law that the jury should view the circumstances surrounding the killing from the standpoint of the defendant, where an issue of self-defense is raised in a homicide case, see body of opinion.

2. **Trial—Instructions—Covering Issues.** The instructions must be applicable to the evidence. An instruction, although incomplete, is not ground for reversal if it fairly covers the law on a matter in which the evidence is not in dispute.

3. **Appeal and Error—Harmless Error—Instructions.** This court is not authorized to reverse a conviction on the ground that the trial court erred in its instructions to the jury, unless from an inspection of the entire record it appears that the defendant was injured thereby, and to determine this issue the court must consider the question as to whether the defendant is guilty or innocent of the offense charged.

4. **Homicide—Harmless Error in Instructions—Lack of Defensive Evidence.** Where the defendant is convicted of manslaughter in the first degree and punishment assessed at the minimum under the law, and defendant's own testimony shows him to be guilty of the crime of which he was convicted, alleged errors in the instructions and in the refusal to give a requested instruction will not be held prejudicial.

Appeal from District Court, McCurtain County; A. A. McDonald, Judge.

Etheredge & Arnett, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

MATSON, J. This is an appeal from a judgment of the district court of McCurtain county wherein Will Baker was found guilty of manslaughter in the first degree for the killing of one Charlie Walker, and sentenced to serve a term of four years in the state penitentiary. Defendant Will Baker and deceased, Charlie Walker, were negroes, and on the night of the killing were attending a negro festival at the home of John Cubit, who resided about 10 miles south of the town of Haworth in McCurtain county, Okla. About 30 or 40 minutes before the altercation which resulted in the killing of Charlie Walker defendant and deceased had had some trouble inside the house of John Cubit, in which difficulty defendant received a knife wound at the hands of the deceased. The parties were separated, the wound was dressed, and there is some evidence that an effort was made to get the deceased to leave the festival. The fatal difficulty occurred near a fire, which was built outside the yard gate in the public road. Several people were standing close to the fire at the time the difficulty occurred, and the evidence as to just what occurred at that time is somewhat conflicting. According to the state's witnesses, the defendant approached the deceased from the rear, and struck him over the head with a fence paling, or other heavy stick of wood, knocking him down, and thereafter defendant continued to beat the deceased over the head and body with such instrument until he was told by some bystander to run. The deceased died some time the next day from the effects of the wounds received in this beating.

The defense interposed was self-defense. The defendant contended that just prior to the time he struck the deceased, the deceased, as the defendant thought, made an effort to strike him with a knife, and that whatever he did in the altercation by way of beating the deceased was done to prevent the deceased from again injuring him with the knife. There was some evidence to the effect that an open knife was found

in the right hand of Charlie Walker immediately after the beating. In detailing just what occurred at the time of the fatal difficulty the defendant testified as follows:

"Q. Supposing this is the gate you are coming out of (indicating). We will turn it around a little bit. Let this represent the gate this way. We will use this stick (indicating). Then the path ran which way? A. East and west. Q. Where was Charlie from here (indicating)? A. West. Q. When you saw him? A. West. Q. As you went out of the gate, supposing this is the gate, where would Charley Walker be? A. West of the gate. He would be like this (indicating). Q. Place that stick where the stick was lying relative to the gate. A. Like this (indicating). When I turns like this I sees Eli Steel and Louis Duckett kinda watching in the hall to try to see how I am going out of the gate. I looked, and the stick was lying a little further this way (indicating), and I picks up the stick, and he jumps at me, and I struck left handed and kinda whirled like that (indicating), and he went down on his all fours, and I run up by the side of him and hit him with the stick. I hit him just as fast as I could like this (indicating). Q. You then did what? A. Run on up the road. Q. About how far did you run before you stopped? A. I guess maybe it was about 30 or 40 yards. * * * Q. Will, when you got out of the gate and looked and saw Charley Walker, which way was his face? A. Facing me. Q. Was he standing still, or not? A. No, sir; coming towards me. Q. How was he coming towards you? In what attitude? A. Coming towards me with a knife in his hand. Q. Just stand up and show the jury. A. Coming towards me with his hand up like that (indicating). Q. In which hand did he have his knife? A. Right hand. Q. Did you see the knife at that time? A. I could see the blade shining by the moon light."

It is first contended that the trial court erred in giving two instructions on the law of self-defense. Instruction No. 15, first complained of, is as follows:

"In determining the question as to whether or not the defendant was in danger or apparent danger, under these instructions you are told that the law requires you to view the

circumstances at the time from the defendant's standpoint, as they reasonably appear to him, that is, that the circumstances under which the killing occurred, as they reasonably appeared to the defendant, were sufficient to excite the fear of a reasonable person that his life was in danger, or that he was in danger of receiving great bodily injury at the hands of the deceased, or apparently so, and that the defendant acted under the influence of such fear at the time.''

'An instruction in almost the identical language of that above, where the issue was self-defense, was approved in the case of Turner v. State, 4 Okla. Cr. 164, at page 191, 111 Pac. 988. We consider the instruction a fair exposition of the law that the jury should view the circumstances surrounding the killing from the standpoint of the defendant.

Instruction No. 16, also complained of, is as follows:

''Evidence has been offered before you for the purpose of showing that the deceased had made threats of violent nature toward the defendant prior to the difficulty. You should consider this evidence, and if you believe that the deceased had made threats of a violent nature toward the defendant, you should consider this testimony in connection with the other facts in the case, for the purpose of ascertaining whether or not deceased was probably the aggressor in the difficulty in which he lost his life, and if you believe that threats of a violent nature made by the deceased against the defendant had been communicated to the defendant prior to the homicide, you may take this fact in consideration in connection with the proof in the case, for the purpose of ascertaining whether or not the defendant reasonably, in good faith, believed that he was in danger of losing his life, or of suffering great bodily injury at the hands of the deceased at the time of the homicide.''

It is urged against the latter instruction that it does not fully state the law, for the reason that it requires the jury to believe, not only that threats of a violent nature had been communicated to the defendant as having been made by the

deceased against the defendant, but also the instruction requires the jury to believe that such threats, although communicated, must have been in fact made by the deceased before they should be considered. We deem the law to be that, as to communicated threats, so far as they bear upon the condition of mind of the defendant, it is immaterial whether such threats were actually made b'y the deceased; and for that reason instruction No. 16 is clearly incomplete as a statement of an abstract proposition of the law relative to communicated threats in cases of this kind.

But, in view of the provisions in section 6005, Revised Laws 1910, this court is not authorized to reverse a conviction upon the sole grounds of misdirection of the jury, unless upon—

"an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a violation of a constitutional or statutory right."

An examination of the record in this case discloses that as to such threats alleged to have been made by the deceased and communicated to the defendant there was absolutely no dispute in the evidence to the fact that such threats were actually made by the deceased. There having been no dispute on this issue we cannot see wherein the defendant was in any way prejudiced by the failure of the trial court to instruct as to the bearing of communicated threats where there was no evidence that such threats had been made by the deceased. The instruction given, we think, stated the law as applicable to the evidence in this case, and under the circumstances of the evidence was not prejudicial to the defendant.

It is also contended that the trial court erred in refusing to give the instruction No. 8, requested to be given by the defendant. This requested instruction related to the evidence

concerning the first difficulty between the defendant and the deceased, in which difficulty the defendant had received a knife wound at the hands of the deceased, and related to the purposes for which the jury should consider such evidence in its bearing on the issue of self-defense. We are of opinion that such instruction, or one of similar import, should have been given, and the court would be inclined to reverse this judgment for failure to give this requested instruction, were it not for the fact that defendant's own testimony is sufficient to authorize his conviction of manslaughter.

This court would not be authorized to reverse a conviction on the ground that the trial court erred in its instructions to the jury, unless from an inspection of the entire record it appears that the defendant was injured thereby, and to determine this issue the court must consider the question as to whether the defendant is guilty or innocent of the offense charged. Fowler v. State, 8 Okla. Cr. 130, 126 Pac. 831; Fulkerson v. State, 17 Okla. Cr. 103, 189 Pac. 1092.

Other alleged errors are complained of, but we deem it unnecessary to consider the same in view of the defendant's testimony. It is a sufficient answer to the contention of defendant's counsel to say that after a careful review of the facts in evidence the testimony is susceptible of only two conclusions. First, according to the state's witnesses the jury would have been authorized in finding the defendant guilty of murder, and, taking the testimony of the defendant, we believe he is guilty of manslaughter in the first degree upon his own statement. That the testimony of the defendant established the defense of justifiable homicide could not be held without disregarding all well-settled rules and statutes imposing the duty on one engaged in a quarrel to use only such force as reasonably appeared to him to be necessary to prevent death or serious bodily injury. In this case the testimony of the

defendant discloses that he not only struck the deceased over the head with a club, but after he had done so and the deceased, as defendant says, was "down on his all fours, I run up by the side of him and hit him just as fast as I could." Under such statement by the defendant the jury was clearly authorized in finding him guilty of manslaughter, and apparently the jury took the defendant's view of the difficulty, or else he would have been convicted of murder.

This case was well tried, and has been ably briefed; and, after a careful examination of the entire record, giving full consideration to the errors assigned, we conclude that no other result could have been reached by the jury, on the defendant's own testimony, than that of his guilt of manslaughter in the first degree. Under the repeated ruling of this court the alleged errors, therefore, were not prejudicial, and for reasons stated the judgment is affirmed.

DOYLE, P. J., and BESSEY, J., concur.