## WILL (W. B.) NORRID v. STATE.

No. A-7859. Opinion Filed May 16, 1931.
Withdrawn, Corrected, Refiled, and Rehearing Denied June 27, 1931.
(1 Pac. [2d] 417.)

Arthur Fitzpatrick, for plaintiff in error, on appeal.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Sequoyah county of the crime of larceny of live stock, and his punishment fixed by the jury at imprisonment in the state penitentiary for two years.

The evidence of the state was that one Charley Kumpke was the owner of one roan cow and two red heifers; that, on the evening the cattle were taken, defendant was at Kumpke's store inquiring about cattle, and the wife of Kumpke pointed out these three cattle to defendant and said that they belonged to her husband; that the cattle went off up the road toward the mountain and defendant remained at Kumpke's place of business until after dark; that Kumpke's place of business was at Brent; that defendant employed a truck driver on that evening to take some cattle to Ft. Smith; that officers learning about this transaction went on the road toward Ft. Smith and waited; that a truck came by in the night loaded with cattle, and the officers followed it on into Ft. Smith and there found the defendant unloading the cattle; that when the officers asked him what he was doing unloading cattle at that time of night, he said it was hot, and when asked who the cattle belonged to, said that one of the

yearlings was his and the other two belonged to his father. When defendant was confronted by the prosecuting witness, he said if they were Kumpke's cattle he did not know it; that he bought them from a fellow named J. R. Benge; that he had never seen him before and did not know him, and that the reason he had taken the cattle to Ft. Smith was because he had given a hot check for them and wanted to get the money back in the bank before the check got around.

Defendant, testifying for himself, told the story of purchasing the cattle from Benge, whom he did not know and had not seen since.

The jury saw the witnesses and heard them testify and were in a position to judge of the truthfulness of defendant's explanation of how he came into possession of the cattle, and evidently did not believe his story.

The evidence supports the verdict of the jury, and the cause must be affirmed unless the errors complained of are sufficient to require a reversal.

Defendant complains first of the admission of incompetent testimony.

The principal part of the evidence complained of was not objected to until after the witness had answered the question, and then there was no request of the court that the answer be stricken. This court has held that one cannot speculate as to what the answer will be and wait until after the witness answers and, when the answer is unfavorable, object to the same; that such objection would not be considered unless there was a motion made to strike the evidence for some reason which would show the answer to have been prejudicial to the defendant. Keeler v. State, 24 Okla. Cr. 206, 217 Pac. 228.

Defendant next contends that the court erred in permitting the county attorney in the cross-examination of witnesses to inquire into their occupation, their manner of living, and their companions.

In Fowler v. State, 8 Okla. Cr. 130, 126 Pac. 831, this court said:

"On cross-examination for the purpose of affecting his credibility, the occupation, manner of living and companions of a witness may be inquired into.

"The fact that a witness is a professional bootlegger, or has been convicted of bootlegging, may be proven for the purpose of impeaching his testimony."

In the case at bar, the state in cross-examining the witnesses sought to get before the jury the occupation, manner of living, and companions of the witnesses for the purpose of affecting their credibility. This the state had a right to do.

Defendant next complains that the court erred in limiting the character witnesses to three.

The character of the defendant was not put in issue by the state. The court permitted defendant to introduce three character witnesses. The record does not disclose that the defendant requested permission to use any other witnesses. This evidence of good character of defendant was not controverted by the state. It is within the sound discretion of the trial court to limit the number of character witnesses. The trial court placed too close a restriction upon the defendant in the matter of these character witnesses, but the same did not amount to such an abuse of discretion as to require a reversal of the case.

Defendant next contends that the state failed to prove venue.

The evidence of the state is that the cattle were owned by Kumpke, who lived at Brent, and that the cattle were loaded not far from this town. This court takes judicial notice of the names and boundaries of counties and the location of towns therein, and takes judicial notice of the fact that Brent is in Sequoyah county.

In Ward v. State, 13 Okla. Cr. 81, 162 Pac. 232, this court said:

"The better and safer plan is for the state to prove venue by direct and positive evidence, yet the essential test is whether or not the venue has in some way been proved, and if it has been proved by circumstances or indirect statements which fix the venue the requirements of the law have been met."

It would make it much easier for this court to dispose of cases if county attorneys would prove venue by positive and direct evidence.

Arthur Fitzpatrick, the attorney who represented the defendant in this court, did not assist in the trial of the case and is not responsible for the condition of the record as it reached this court. There are errors in the record—proper exceptions were saved to some of them, while in others no objection was made, but none of these errors are sufficient to require a reversal of the case.

The errors of law complained of by defendant being without substantial merit, the cause is affirmed.

EDWARDS, J., concurs. DAVENPORT, P. J., absent.