Donald Elvin MELOT, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13205.

Court of Criminal Appeals of Oklahoma.

Oct. 3, 1962.

As Corrected Oct. 22, 1962.

Valdhe F. Pitman, Malcolm M. Baucum, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Donald Elvin Melot, plaintiff in error herein, defendant below, was charged by information in McClain County, Oklahoma, with the crime of second degree burglary (21 O.S.1961 §§ 1435, 1436) of the store building of E. H. Luper, in Wayne, Oklahoma, on September 12, 1961. He was tried by a jury, convicted and his punishment set by the jury at two years in the penitentiary. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

Briefly, the facts are that Mr. Luper, on September 12, 1961, owned a grocery store in Wayne, situated on the main street. Mr. Henagar owned a grocery store in the same block, located near the north end of the block. On the date in question, Mr. Henagar arose and went to his store about 5:30 a. m. His store was located just across the alley from his home. It was overcast and dark that morning. After going to his store, he walked south down the sidewalk, and in passing the Luper store observed the lock to the front door was lying on the sidewalk. He went back to his store and called Mr. Luper, to advise him that his store had been broken into. He then returned to Luper's store, and saw a man in the front of the store, boxing up cigarettes and things. He went back to his store, through the store and to his home and got his gun, then returned to Mr. Luper's store, in which there was a light burning. The front door was closed, and he yelled for the man to come out, and the man started towards him with his hands up. The individual was clad in a yellow checked shirt and denim pants. He came to within five or six feet of Mr. Henagar, so close that Mr. Henagar said he could definitely identify him. The man was behind a counter, and when he got to the end of the counter he suddenly turned, ran toward the back of the store, and escaped through the back door. Mr. Henagar testified that he then ran to the corner, ran east to the alley, and saw the defendant running across the alley and into a weed patch. Witness returned to the front of the Luper store, and

the front door was then open. He met Mr. Luper when he drove up and they made a search for the man, but did not see him. Later Mr. Henagar was at his home and saw the defendant walking up the street going west, past Mr. Henagar's home. Almost immediately the sheriff arrived, and shortly thereafter the defendant was arrested. He was still clothed in the yellow checked shirt, and the denim pants he was wearing when Mr. Henagar saw him in the store. He positively identified Melot as being the man in question.

Mr. Luper corroborated the fact that his store was broken into without his knowledge, permission or consent.

This man's guilt was very definitely and clearly established when the state rested its case. The defendant offered no evidence in his own behalf.

The defendant's first complaint is predicated upon the closing argument of the county attorney. In said argument the county attorney made the following statement:

"The question then follows, what shall his punishment be? I'm not activated by any motive of animosity towards this man but I'll tell you what I am activated by, I am activated by these petty criminals or other classes of criminals constantly coming down to McClain County out of Oklahoma County, breaking into stores, breaking into homes—" * * * "—and then scooting back up these paved highways to Oklahoma County to enjoy the fruits of their criminal activities. And the only way to put a stop to it, as I view it, is for the juries, the citizens of McClain County sitting on the juries to say to them, that if you come down to McClain County and break into a home or break into a store and are convicted, you're not going to get a slap on the wrist, you're going to get a sentence which, in our judgment, is commensurate with the seriousness of your offense. * * *"

The proper exceptions to the court's order overruling the objections were preserved.

A similar type of argument was condemned in Fry v. State, 91 Okl.Cr. 326, 218 P.2d 643, relied on by the defendant. Therein we said such appeals to prejudice of a resident of one county against a resident of an adjacent county, appeals to sympathy, and reference to matters clearly outside the record, influenced the jury in fixing the penalty. In one part of the special prosecutor's argument he referred to Fry as a "cold blooded murderer". He further cast reflections, unsupported by the record, on defense counsel, criticizing him for not introducing a bill into the legislature to abolish "beer joints" in Oklahoma. These are only a few of the inflammatory, unwarranted statements in the special prosecutor's argument in the Fry case. We did not reverse that case, but modified it because we thought the penalty was excessive. We felt the jury was influenced by the argument, in assessing the penalty. We said therein there was no doubt concerning the defendant's guilt, and if the case were tried over ever so many times, there could be no conclusion other than the defendant's guilt.

▆▆ Such is true herein. The defendant was caught in the commission of the burglary, positively identified, and he offered no defense whatsoever, except his general plea of not guilty. Defendant was only assessed the minimum penalty fixed by law. 21 O.S.1961 § 1436. How, then, under these conditions can we say that the jury was influenced by the argument in assessing the penalty imposed herein? Hence this feature of the case falls squarely within Johnson v. State, 95 Okl.Cr. 1, 237 P.2d 909, wherein it was said, in syllabus 5:

"Where the guilt of the defendant is clear and there is no reason to believe that the jury could arrive at any other verdict but guilty the court will not reverse a case because of improper conduct of the county attorney."

And in the body of the opinion:

"The remark of the county attorney seems to us to be relatively unimportant for where the guilt of the defendant is clear and there is no reason to believe that the jury could arrive at any other verdict but guilty the court will not reverse a case because of improper conduct of the county attorney. Hall v. State, 68 Okl.Cr. 367, 99 P.2d 163; Abby v. State, 72 Okl.Cr. 208, 114 P.2d 499, 115 P.2d 266, especially where in view of the entire record it does not appear that the substantial rights of the defendant have been affected or the minds of the jurors prejudiced against him. Rheuark v. State, 86 Okl.Cr. 409, 193 P.2d 621."

■ While the conduct of the county attorney herein in attempting to array one section of the state against another is reprehensible and deserves severe censure, we cannot see that the defendant was in fact prejudiced thereby, in view of the overwhelming evidence of guilt and the fact that the minimum sentence was imposed. This county attorney is well versed in the law, and certainly knew better. We have repeatedly held that error without injury is not grounds for reversal. Dixon v. State, 89 Okl.Cr. 205, 206 P.2d 231; Scott v. State, Okl.Cr., 279 P.2d 1113. In a close case, such conduct could be fatal, but this is not such a case. The record would have supported a much higher penalty, or even the maximum of seven years. We are of the opinion that in case of clearly established guilt, it takes something more than an apparently ineffective argument alone to effect reversal of the judgment.

The defendant's second contention is that the court erred in not giving defendant's requested instruction No. 5, instead of the court's instruction No. 7. These instructions read as follows:

"Defendant's requested instruction No. 5:

"You are instructed, that in this case the state relies upon the testimony of Frances Marie Owens, together with other facts and circumstances to establish the fact of breaking and entering as alleged in the information and the connection of the defendant Donald Melot therewith. In this connection you are instructed that the testimony of the said Frances Marie Owens shows her to be an accomplice, and before you will be authorized to convict the defendant upon the testimony of an accomplice you must be satisfied that the testimony of such accomplice has been corroborated by such other evidence as tends to connect the defendant with the commission of the offense charged, and such other evidence is insufficient in corroboration if it merely shows the commission of the offense or the circumstances thereof."

The Court's Instruction No. 7:

"As to the witness Frances Marie Owens, you are instructed that you are to determine from the foregoing instruction whether or not she is an accomplice to the crime of which the defendant here stands charged. If you determine that she is an accomplice, then you are instructed that you cannot convict the defendant upon the testimony of said witness, unless you find that such testimony is corroborated as provided in the foregoing instruction."

■ It is fundamental that instructions must be based upon the pleadings, the facts and the law applicable thereto. It is true the information originally charged Mrs. Owens as an accomplice of Melot and Smithey, but the case was dismissed against her before trial.

The only evidence as to her participation in the burglary, if any, is substantially as follows: She left Oklahoma City with Melot and Smithey about 9 or 9:30 p. m., drove to Lindsay, Oklahoma, then back to within three or four blocks of Wayne, Oklahoma. Here they parked for about an hour and a half, and she overheard Melot and Smithey talk about burglarizing a store.

It was then some time before day-break. It is apparent the car was moved from this point to a point nearer Main Street, where it was located when Mrs. Owens was discovered lying down in the front seat asleep, according to Mr. Luper's testimony. Melot and Smithey left the car. Smithey eventually returned, but Melot did not. Mrs. Owens and Smithey drove south of the town, where they were picked up by the sheriff a short time later.

Mr. Henagar testified he saw the automobile parked fifty feet off Main Street on a street running west of Main. Mr. Luper said it was about half a block west of Main Street. Henagar did not see anyone in the car at first, but a few minutes later he saw a woman in the front seat. He and Mr. Luper aroused her. They spoke to her, the record shows, but it does not reveal the nature of the conversation. Later the car left. They learned the woman was Mrs. Owens. From the position of the automobile Mrs. Owens was in, it is not clear whether she could have been acting as a lookout or could even have seen the Luper store from where she was parked. If she was asleep, as the record shows, she could hardly be regarded as a lookout. Anyway, from this record much is in doubt as to whether she was an accomplice.

■ The law governing such cases is clearly stated in 23A C.J.S. Criminal Law § 1162, p. 427, notes 90 and 91, as follows:

"Where the evidence clearly shows that a witness is an accomplice, and a statute requires the testimony of an accomplice to be corroborated, an instruction that the witness is an accomplice and hence needs corroboration is proper; but where the evidence is conflicting or doubtful, whether or not a witness is an accomplice or whether or not the testimony of a witness is corroborated, is exclusively a question for the jury, whose province in this regard must not be invaded by the instructions of the court."

■ We believe instruction No. 7, hereinbefore quoted, was a proper instruction under the facts of the case. Whether Mrs. Owens was actually an accomplice or lookout as contended by the defendant was in doubt. Her testimony and that of Mr. Henagar leaves much to speculation concerning her actual participation in the burglary. Such being the case, the court's instruction No. 5 properly left this doubtful evidentiary matter to the jury.

If Mrs. Owens had in fact been an accomplice, the defendant's requested instruction would have been proper and should have been given. But we cannot agree with the defendant's contention that the evidence clearly demonstrates that Frances Marie Owens was an accomplice.

■ This court has repeatedly held that where the evidence is in conflict as to whether the witness participated in the crime and is an accomplice, is one of fact for the jury. Walker v. State, 89 Okl.Cr. 19, 204 P.2d 552, wherein we said:

"Where the evidence is conflicting as to whether a witness participated in committing the crime charged, the question as to whether or not such witness is an accomplice is one of fact for the jury. But where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice.

"Tit. 22 O.S.1941 [1961] § 742, provides: 'A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof.'

"Where the facts justify, the court should, as a matter of law, instruct the jury that the witness is an accomplice, and this instruction should be followed:

by one based on Tit. 22 O.S.1941 § 742."

Where the evidence is in doubt as to whether the witness is an accomplice, it would axiomatically follow that the question is one for the jury.

In McKinney v. State, 20 Okl.Cr. 134, 201 P. 673, it was said that where the facts are disputed and are reasonably susceptible of either interpretation such issue is one for the jury, under appropriate instructions. We believe that under the evidence as to whether Mrs. Owens was an accomplice the trial court's instructions properly left the matter to the determination of the jury.

It is asserted that the lookout is always an accomplice, but the evidence of Mr. Luper was that they found Mrs. Owens asleep in the car, and they "aroused her up". This fact places the contention that she was a lookout very much in doubt. Under these conditions the fact of her being an accomplice was reasonably susceptible of either interpretation and was for the jury. It would therefore have invaded the province of the jury under such a record for the trial judge to have given defendant's requested instruction No. 5, positively instructing that Mrs. Owens was an accomplice.

■ The defendant's third contention is that the court erred in not giving his requested instruction No. 3, reading:

"If you believe from the evidence that any witness has willfully and knowingly testified falsely to any material matter, then you may, if you deem proper, disregard testimony of such witness unless you find other portions of his testimony to have been corroborated by other credible evidence, or you may without such corroboration give the testimony of such witness on any other points such weight and credibility as you deem it entitled to."

This instruction has been approved in Davis v. State, 18 Okl.Cr. 453, 196 P. 146. While it would not have been error to have given the foregoing instruction, it was certainly, under the record, not error to refuse to give it.

■ In Baker v. State, 22 Okl.Cr. 224, 210 P. 292, this court said:

"This court would not be authorized to reverse a conviction on the ground that the trial court erred in its instructions to the jury, unless from an inspection of the entire record it appears that the defendant was injured thereby, and to determine this issue the court must consider the question as to whether the defendant is guilty or innocent of the offense charged.

"Where the defendant is convicted of manslaughter in the first degree and punishment assessed at the minimum under the law, and defendant's own testimony shows him to be guilty of the crime of which he was convicted, alleged errors in the instructions and in the refusal to give a requested instruction will not be held prejudicial."

Citing in support of the foregoing Fowler v. State, 8 Okl.Cr. 130, 126 P. 831; Fulkerson v. State, 17 Okl.Cr. 103, 189 P. 1092. And see Holmes v. State, 18 Okl.Cr. 415, 195 P. 508.

In Munson v. State, 13 Okl.Cr. 569, 165 P. 1162, this court said, in a similar situation:

"This court is not allowed to reverse a judgment of conviction on account of the misdirection of the jury, unless after an examination of the entire record it clearly appears that there has been a miscarriage of justice, or that the defendant has been deprived of some constitutional or statutory right."

Certainly herein there is a total lack of defensive evidence and an overwhelming evidence of guilt. We are of the opinion, under such conditions, the rule would be the same as stated in Munson v. State, supra. The defendant was caught in the act of burglary, and positively identified, and there is not a semblance of denial in the entire record. We have examined the court's instructions as a whole, and they correctly

state the law of the case, notwithstanding the refusal of requested instruction No. 3.

■ Finally, the defendant urges that the trial court erred in refusing to give his requested instruction No. 7, reading as follows:

"You are instructed that testimony tending to prove identity is to be scrutinized with extreme care; and that the possibility of human error or mistake and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must carefully consider these factors passing upon the credibility that you attach to the witness' testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witness's identification of the person or thing."

The identification herein was positive and unequivocal from the time the defendant was apprehended in the act of burglary. The things that transpired before and afterwards, including the circumstances of the defendant's arrest and Mr. Henagar seeing him immediately after the burglary, dressed exactly as he was when he saw him face to face in the store, give great weight to the accuracy of the identification. Under the evidence presented herewith we are of the opinion that it was not reversible error to refuse the defendant's requested instruction No. 7. We believe that under the evidence herein it would have been misleading to the jury for it to have been instructed that such evidence should be received with extreme care. There are conditions where such an instruction might be proper.

■ In this connection it was said in Commonwealth v. Kloiber, 378 Pa. 412, 106 A.2d 820:

"Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that ' "his [positive] testimony as to identity may be treated as the statement of a fact." ' Commonwealth v. Ricci, 161 Pa.Super. 193, 195, 54 A.2d 51, 52, Commonwealth v. Sharpe, 138 Pa.Super. 156, 159, 10 A.2d 120. For example, a positive, unqualified identification of defendant by one witness is sufficient for conviction even though half a dozen witnesses testify to an alibi. Commonwealth v. Pride, 143 Pa.Super. 165, 167, 18 A.2d 879; Commonwealth v. Saldutte, 136 Pa.Super. 52, 56, 7 A.2d 121; Commonwealth v. Ricci, 161 Pa.Super. 193, 54 A.2d 51, supra; Commonwealth v. Tracey, 130 Pa.Super. 15, 196 A. 549; Commonwealth v. Lindner, 133 Pa. Super. 196, 2 A.2d 518; Commonwealth v. Sharpe, 138 Pa.Super. 156, 10 A.2d 120, supra.

"On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution."

Herein the question of possibility of mistaken identity was not raised and is unsupported by any evidence. We have held in cases where a plea of mistaken identity or alibi is raised a question is presented for the jury's determination under proper instructions. No such situation is presented by this record.

For all the above and foregoing reasons, the judgment and sentence herein appealed from, is affirmed.

NIX, P. J., and BUSSEY, J., concur.